Good morning. My name is Deborah Gutierrez. I represent Paul and Patty Junod, who are present in court today behind me. And I would also like to reserve five minutes of my time, if the Court permits, for a rebuttal. Okay. The core question in this case is whether a homeowner can challenge a foreclosure by alleging specific facts that demonstrate that the foreclosing party did not obtain the mortgage loan, by pointing out that the mortgage loan was not delivered to the trust within the trust's closing date, in noncompliance with the pooling and servicing agreement, the trust agreement that applies to the trust, and in violation of applicable New York trust law. That's the central issue in this case. Let me ask you this question, Ms. Gutierrez. In California, we use deeds of trust, not the formal common law mortgage. Are you using the term mortgage loan to encompass deed of trust secured real estate loans? Yes, Your Honor. I'm using that term to – the way that I will use that today, the mortgage loan, it will encompass both the deed of trust and the note. All right. Now, do we have an action under Truth in Lending Act? That was not something that we appealed, but it was part of the – Oh, I'm sorry. I got you mixed up. It was some other case. Pardon me. I withdraw that. Thank you. So that's the central question. And there are two – really two questions that stem from this, two inquiries. One, whether a homeowner can challenge a foreclosure in general in California due to the comprehensive statute, the nonjudicial foreclosure statute. The second question is whether – how a homeowner can do that. If a homeowner can, how does a homeowner do that? And are the facts that a homeowner can allege, can they be based in this theory that there was a post-closing date transfer to a trust that is governed by New York trust law? The first question has already been answered by the court in Gomez v. Countrywide. And in that case, the court said that while a homeowner may not file a preemptive action to challenge a foreclosure party, foreclosing party's authority to foreclose, that the party can advance a challenge to foreclosure if he or she asserts specific facts demonstrating why the wrong party is foreclosing. So essentially the court said, look, you can't just drag somebody into court and say you don't have authority, prove to me how you have authority. But if you have a factual basis, you can do that. Doesn't that then bring you within the tender rule? It can bring you within the tender rule. The tender rule, however, has been treated by the appellate court in Lona v. Citibank and by other courts who say that there are many exceptions to the tender rule. And one of the exceptions to the tender rule is when a homeowner is claiming that a foreclosure sale is void. And it's well-established under California law, under the case of Demock v. Emerald Properties, that when a homeowner is claiming that a foreclosure sale is void, not just voidable, that if it's void, that tender is not required. There are additional reasons why tender is not required in a case like this. Courts have acknowledged that when a homeowner challenges a foreclosure, that it would be inequitable to require them to tender. That's something that many district courts have taken that position, Onofrio, Vogan, many others, essentially saying, well, we would never, a homeowner would never be able to challenge a foreclosure if we were asking them to tender the full amount due. Are we bound by Yamamoto to exactly that rule? You can't challenge the note, the default on the note, unless you can tender the full payment. Well, no, Your Honor, and that's particularly because of these cases. The concept here that we're alleging that the foreclosure sale is void brings us within the case. Why is it void? Let's get to that. Why do you claim that foreclosure sale here is void? That is something that has been discussed in Glaske. It's a central issue. This concept of void versus voidable is a central issue in the analysis of whether the plaintiff can maintain this action. It's somewhat of a complex issue. The Court in Glaske, and can I just start by saying that Glaske is the only appellate case law on this topic interpreting State law issues, and I would assert that this Court is bound by the ruling in Glaske for that reason. Why? There are no other ruling in Jenkins, isn't there? It's absolutely not contrary, Your Honor. That is an argument advanced by the Respondents to make the appearance that there's a split in authority. There's absolutely not a split in authority. Jenkins deals with the typical preemptive foreclosure actions. Just as the Court in Gomez v. Countrywide said, look, you can't just file these preemptive actions with boilerplate allegations, just asking somebody to prove their authority to foreclose. Jenkins was a similar case. And in fact, the court of appeal in that case pointed out Jenkins has not articulated any specific facts demonstrating why this foreclosure sale is invalid or why the party does not have authority to foreclose. In fact, the Jenkins case did not even mention an assignment of deed of trust. It did not mention New York trust law. It did not mention the concept of void v. voidable. And most importantly, the plaintiff in Jenkins outrageously, in my opinion, asked or advanced the argument that simply because the mortgage loan had been securitized that somehow that somehow extinguished the deed of trust. The court was right, I think, is correct in that case, to say this is a typical preemptive action and we're not going to let the homeowner proceed. So I don't think that – and Glaske talks about this. Glaske talks about other cases both in State and Federal courts who have said that a homeowner cannot challenge a foreclosure. It makes the distinction that a homeowner can if they have specific facts and demonstrate why the wrong party is foreclosing. That court makes the very, very important distinction. And I would argue that Jenkins falls within that category. It's one of those preemptive actions. It doesn't speak to the very central issues of this case that involve a trust, a closing date, a PSA, New York trust law, and an invalid assignment of deed of trust. Getting back to the concept of void versus voidable, Your Honor, the court in Glaske acknowledged that there – that essentially the court started out by asking – posing the question, when can a homeowner or an obligor challenge an assignment? Because the main argument that has been advanced is that homeowners cannot challenge foreclosures that involve pooling and servicing agreements because they're not a party to that contract. And the court said, look, a homeowner can challenge a foreclosure if, in fact, the assignment – if they're claiming that the assignment is void, because there is a longstanding acknowledgment, and they cite to a secondary source the restatement, I think, of assignments of deed of trust, that says that when an obligor is claiming that the assignment is void, they can challenge it. They have standing to do so. If it's merely voidable, they cannot. What gives them standing? Well, the standing part, Your Honor, comes from acknowledging that whether it's void or voidable. And that's – Why does that – why does the standing turn on that difference? Well, in this case, I think it turns on that difference because it speaks to whether the homeowner can point out issues with the foreclosure statute. And I'll – and let me just back up and say that – Let me ask you this. Yes, Your Honor. If the assignment is void, title to the note remains in the putative asinor, correct? Correct. And has the putative asinor been paid by the debtor? No. It's a default. So what does it matter to the debtor whether the assignment is void or not void? The debt is still there. The debtor has not paid. The debtor is in default. What ever happened to the assignment does not in any way touch the debtor's obligation, does it? The reason that matters, Your Honor, is that there are laws in California that prevent a party that is not the beneficial party. And that means the party with the right to enforce the note. That is articulated in California Foreclosure Statute, Civil Code 2924A1, which specifically says that only the beneficial party or their authorized agent can foreclose. And this concept is so important that the legislature, as recently as January of 2014, reenacted, codified that yet again in the Homeowner's Bill of Rights, and said only the beneficial party can foreclose. And your position is if the assignment is void, then the foreclosing party never became the beneficial party under the deed of trust. That's correct. And importantly, the court in Glaske points out that, and it's a similar fact here, that section or paragraph 22 of the deed of trust contains a similar provision. And paragraph 22 of the deed of trust says that only the lender, the actual party who has a pecuniary interest and who actually owns the mortgage, can foreclose, initiate the power of sale, and can accelerate and demand payment. But the lender can appoint an agent or a nominee to act for him, correct? Absolutely. Absolutely they can. So that's, I think, the premise of the 2924A1 requirement, the beneficial party, is the prism by which both the Glaske and the Gomez courts looked and analyzed their cases, because essentially if the wrong party is foreclosing, it essentially means that a homeowner can lose their property to somebody who does not actually own the mortgage, may not have any connection to their mortgage loan, and may not have any ability to negotiate the terms of that mortgage loan. And that's why it's so important. In California, as the Court is probably aware, a homeowner can lose their home after only being given two notices, a notice of default and a notice of trustee sale. And for that reason, it is of utmost importance that the correct party be initiating that sale. And so that is the prism by which these courts look at the, that's the starting point. The court in Glaske, so it made that determination, if an assignment is actually void, then the party can challenge the validity of that assignment. And then the next step the court took was to ask itself, well, what makes this void? What makes the assignment into a trust after the trust closing void? And the court looks to two things. The court looks to the applicable New York Estates Powers Section 7-.24, which says that under New York trust law, any contravention, any act of the trustee in contravention of the trust renders that act void. I had a question in that regard. And that is that when I looked through the excerpts of the record, I saw two portions of the PSA, but I didn't see the entire PSA. So how would the court be in a position to determine that it was in fact in violation of the PSA when I have just these two clauses? Well, Your Honor, the, there is an audit, a loan audit attached also as Exhibit G to the complaint, which I think contains the applicable portions of the PSA that apply here. And I did review that as well, yes. So Section 2.01, Section 2.02, and I don't know if the court actually has 2.02. The audit does have a link at the end of the audit where the court can find the PSA, and that's still a good link. I've checked it this morning. It's a PSA that's filed with the Securities and Exchange Commission. So that information can be found. But the PSA will represent to the court, and what's attached to the audit does contain this, that Section 2.01 of the trust requires that mortgages be deposited with the trustee together with all the documents listed in Section 2.01, notes and various other documents. Section 2.03, excuse me, 2.03 talks about the warranties and representations that the parties are making. Section 2.05 talks about the closing date. So all of these provisions essentially talk about the concept that there's a closing date of the trust. The closing date is the date by which these mortgages have to be deposited and transferred into the trust. And here again, I'm sorry, but where do I find that precise requirement in the PSA in the record that's before the court? Go ahead. The requirement, Your Honor, is on page 23 of Exhibit G. All right. Thank you. All right. So Section 2.01, which is Section 2.02, acceptance by the trustee. As I said, 2.01 talks about the documents that have to be deposited with the trustee. 2.02 discusses the closing date. It says that the documents shall be delivered by the closing date to the depositor and then to the trustee and the trust administrator, and that the trust administrator shall issue a trust receipt and initial certification with respect to the mortgage loans. Well, I read that as 90 days after the closing date. Yes, Your Honor. And that brings me to my next, the next issue, which is the other. You've got 24 seconds left. Thank you, Your Honor. The other issue that I'd like to bring up is that Section 2.07 states that this trust is governed by the remix statute. It's an internal, it's an IRS code which specifically says that in order for these mortgages to get the tax exemptions that the certificate holders enjoy, they have to be, it defines what a qualified mortgage is. And it talks about that the mortgages have to be assigned and deposited with the trustee by the closing date and no later than 90 days. And Section 2.07 of the PSA similarly discusses this requirement. And so I would argue that both the PSA and the remix statute, again, Glaske talks about this at great length and analyzes this, both of those requirements essentially mandate that these mortgages be pulled into the trust within the trust closing date and in no case 90 days after that. And if, are there any questions that I can answer at this point? I would like to reserve some time for rebuttal. Well, you're over your time, so there's no time reserved. I will afford you a minute. Thank you, Your Honor. Good morning, Your Honors. Jonathan Fink, Greg Finley, and Zach on behalf of Respondents. I suppose as an initial matter, I ought to note for the record that appellants improperly are raising Glaske for a couple of reasons. First of all, not in their briefs. Yes, it was a case that came down later, but this court's rules provide that if you're going to rely on a later case that comes down after the briefing, you're supposed to provide a letter brief and there's supposed to be an opportunity to respond to that letter brief. So just for the record, I want to note that. However, I'm perfectly happy to eviscerate Glaske. Glaske is a case which plaintiff's counsel loves to cite. It's the only case that has come down in that in favor of plaintiffs. In reality, as the court has noted, Jenkins is contra, and more recently, the Court of Appeals for the State of California in the case of Syliga, S-I-L-I-G-A versus MERS, 219 Calop 475, 2013, also rejected Glaske. Have you filed a 28-J letter on that case? I have not, but if they're going to raise Glaske, I think I should have the right to respond to it. Usually we ask counsel to cite any developments in the record, whether or not their opponent has cited it. And I think that that's incumbent on both counsel to do that. If you want to rely on it, one thing that you can do is either file the 28-J letter or you can also take a tear sheet from the deputy with the citation and provide a copy to opposing counsel. I can do that, Your Honor, but, again, I'm a little sandbagged by her raising Glaske without having done that. There has been such a letter filed at his office. I'm sorry, the letter was filed? It's here. It's dated September 18th, and it discusses Jenkins and Syliga. Does it discuss Glaske? It does discuss Glaske. Okay. So it's good that the counsel is not saying that. You told us you were prepared to discuss Glaske. I guess I'd like to go ahead and discuss that. Well, Syliga does reject Glaske. And, in fact, within the past 35 days, every district in the state of California, excuse me, in the federal court system in California has also rejected Glaske. There have been new opinions that have come down. One thing, I looked at some of those cases, and I read Glaske and Jenkins this morning before I came out on the bench. I didn't see in Jenkins a discussion of the New York law. Do any of these cases take Glaske on its own terms to discuss the question of what's voidable and void? That was the heart of her argument was this is void, and if she can't win that, it looks to me that she hasn't got standing. But Glaske does discuss that distinction, and I didn't see it in Jenkins. The recent case from the Central District of Mann v. Bank of America, in fact, does not only take on Glaske but specifically deals with New York trust law. And I can give you the citation for that as well. That's 2014 Westlaw 495617. If you'll provide it to the deputy afterwards and provide a copy to opposing counsel, the deputy will give us the full citation. Okay. And does it discuss the provision that was at issue in Glaske? I believe it does, Your Honor. Okay. And it concludes that it's what? That Glaske is simply wrong, that the weight of cases reject Glaske, both state and federal. They cite to Jenkins in that. I believe they also cite to Sylida in that. Do they conclude under the New York statute that it's only voidable and not void? They reject the standing to challenge the securitization. That's what they reject, Your Honor. Okay. But also, if you want to deal with the New York law, the New York statute that appellants rely on is inapplicable here. It does not apply to commercial trusts. It applies to personal trusts. And we cited in our brief to the cases which say, and the section of New York trust law which applies, providing that commercial trusts are different. We can't invoke 7.2.4 for a commercial trust. And that's one of the fatal errors plaintiff's counsel frequently make. The problem that we have in any event is that there are no specific facts provided by plaintiff. There are generalized conclusions that they have used numerous other times. As the judge below noted, this firm alone in the central district had filed 70 boilerplate cases, raising the exact same allegations. And the court issued a warning that if they did it again, they'd be sanctioned. They have not won those cases because there are no specific facts. This is a plug-and-play complaint. What specific facts are missing? What specific facts are missing is to show that there was, in fact, no acquisition by the trust. And that's another error that appellants make. They assume that the proof of the acquisition has to be a recorded assignment. California law is clear that no recordation of an assignment is required for the acquisition of a loan. What's required is you get the note, and there's no evidence that the note was not acquired here. In point of fact, there's evidence to the contrary. Appellants admit having made payments prior to the default to the very entities they're claiming don't have the right to enforce the note. In fact, they go on to allege in their complaint that they tried to get a loan modification from these same entities. It was only when they went into default and when foreclosure was conducted that they decided, we don't want to play with you anymore. We want to claim you don't own the note. There are no facts provided. There are conclusions. And under Iqbal and Bell Atlantic, there are more facts required. You can't just put a conclusion in front of the court and say, okay, I want my day in court. There are no facts here. Is it a specific fact that the allegation that the trust had closed and there could be no further conveyances to the trust passed a certain date, and this assignment postdated that date?  No, it isn't, because the reportation of the assignment is not required either by the trust documents or by law in California. I don't think you're answering my question. If the allegation were the trust closed, the note had not been assigned on that by that date, and later the trust, the note was purportedly assigned to a trust that was closed. I haven't said anything about recordation. If that allegation is made, why isn't that sufficient? It's not sufficient, A, because they don't have the standing to challenge the securitization, and, B, because they aren't providing any facts to support the conclusion that the note wasn't acquired. It's not enough to say we think it wasn't. You have to have an actual fact, and that's what Gomes requires. Gomes said we don't want preemptive lawsuits. We don't want you getting into the courthouse door and then saying, all right, now I've got to do discovery to try and prove my contention. If the plaintiff's on information and belief says we're led to believe that this note was not acquired by the S&E until after the closing date of the trust, why isn't that sufficient? That's the same sort of threadbare allegation that Iqbal and Bell Atlantic rejected. It's just a conclusion. It's not a fact. No. The assignment of the note bears a date post-closing of the trust. It doesn't here, though. You mean that that's the type of allegation which would be necessary? Simply saying that the assignment took place after the trust closed is not enough. Well, that would be the endorsement rather than assignment, but yes, correct. Right. You would have to – the note would not be assigned, it would be endorsed. Endorsed, right. It's a negotiable instrument, so it's endorsed. And they would have to allege that the endorsement took place after the trust closed, not simply the trust didn't acquire it because the endorsement was post-closing of the trust? Correct. And, in fact, their own complaint has attached as an exhibit, and they've referred to this, a report by their securitization firm, their analyst, which confirms that this was a MERS loan and that the MERS notes show the acquisition of the loan by the trust and the investor. That is on – hold on, I'll give you the citations of the records. It's record 321. They pulled the MERS report. They pulled the milestone report, and they saw that it was acquired. So they've attached their complaint, something that in and of itself is destructive of their contention. There's also a misunderstanding of the difference between void and voidable here. This is not a void loan. Someone, as the court noted, owns the loan. There's no dispute that the intent was for it to be the trust. There's no dispute that appellants paid money to the trust or its servicer, and while they were paying that money, there was no foreclosure. Their argument is not that the trust didn't acquire the note, not that the trust wasn't intent to acquire the note, but that because of their interpretation of New York law, citing the wrong statutes and citing to the PSA, to which they're not a party, they think that it was too late. In essence, they think that no one is entitled to be paid here. They're entitled to get away without paying their loan and to get a free house. Well, if the transfer was void, then doesn't the right to the note remain with whoever started with it? No, because, again, ultimately the intent is to transfer it, and it is transferred with the understanding that the right to collect will go to the new entity. I understand what the party's intended, but if the transaction is void for whatever reason, I agree with you. It stands to reason that the loan is still good from somebody. The question is who's got the right to enforce it. If the transfer, if I try to transfer it from me to you and I don't do it by an instrument the state is willing to recognize and says that that's not legally possible, it means that I still own the note rather than you. I think in this instance Dreamhouse doesn't exist anymore, which would create an issue for that. That creates some different problems, but that may go into bankruptcy law or corporation law or something, wherever Dreamhouse was incorporated. But, again, if the transaction were void, the question is void as to whom. We come back to the issue that the case law with the exception of Glaske is clear that it's not appellants who get to protest the fact that it may or may not be void. It is irrelevant to them who they pay. What's the theory of Glaske that they have standing? Your Honor, I've read Glaske on many occasions and I really don't understand how the court came out where it did. It's been rejected repeatedly simply because no one really understands why they came out the way they did. They just did. They seem to think that, well, there's a harm simply because the plaintiff is going to lose their home, but that's not a result of the transfer of the loan. It's a result of their default on the loan. Glaske got it wrong. Counsel, the standing requirement is an interesting one. Is the standing requirement only an issue of state law, or is there an Article III problem that we should be aware of? It's primarily, Your Honor, an issue of state law. I've not looked into the Article III issue. I know they briefed it extensively, but it was not an issue that particularly It is not an issue that had been raised below, and it's not an issue that was really germane to this case until they raised it. And even when they raised it, it was off the point of what the court below had decided. And it was off the point of the challenges that had been raised to their complaint that were sustained by the court below. So you believe that there's not an Article III problem here? I have not looked into the Article III problem because it was not relevant to the analysis I was doing, Your Honor. Okay. Any other questions, Your Honor? Judge Gleeson? No. No, not at this time. Thank you. Thank you, Your Honors. Thank you, Mr. Pink. Ms. Gutierrez, I'll forward you a minute. Your Honor, I would just like to clarify the concept that these plaintiffs are not looking to invalidate the debt. They understand that they owe the money. They simply wanted to negotiate with the correct party. They sought over and over.  They have a duty to pay. I agree with that, Your Honor. However, they do have a duty to negotiate under California law under 2930. They can negotiate with the lender whenever they want to, can't they? That's exactly the issue here, Your Honor. Who is the lender? That's the question. And it became obvious to the plaintiffs after they sought to ask questions, get information, negotiate, that this party did not really have the right to negotiate, nor were they doing so in good faith. And that's what led to this lawsuit. But the main point here is simply is that they want due process. If, in fact, California law has requirements before a foreclosure, they should be met, whether or not they're in default and whether or not counsel is saying that the assignments have to be recorded or not. The other issue I would just like to make clear is that counsel is trying to confuse concepts about whether there's a requirement for recordation with what's contained in the assignment of deed of trust. Just because there's no requirement that those assignments of deed of trust be recorded doesn't mean that once they do record them and make factual representations in those assignments of deed of trust that we can't then use those as a way to challenge a foreclosure. It does become a specific fact. As Your Honor pointed out, the date in the assignment of deed of trust, when that occurred, it's an actual legal transaction. That's an actual transfer, what they're claiming. When you file, execute an assignment of deed of trust under the case of Dottie v. Burkett, it has a legal significance. And so on the date that they execute and record those assignments of deed of trust, they're purporting that something took place, a meaningful transaction, a legal transaction, an attempt to assign the mortgage. Recordation does not have to take place the same day as execution of an assignment, correct? That's correct, Your Honor. In this case, there's 10 days' difference. But it was signed, executed on April 16th of 2010, recorded 10 days later on the 26th. The point here is that that was years, years after the trust closed. And so even if there's any argument, and this goes back to Judge Gleeson's concern, even if there is, if it's 90 days or 30 days or 60 days, the point here is that the trust closed years later. There is no way for that trustee to accept a mortgage into the trust years later. It would prejudice the interest of the certificate holders. It would essentially expose the trust to additional tax liability. Your people say they've got the right to negotiate with the lender. Did they attempt to negotiate with the ASINOR before they found out that it had been transferred under the PSA? Absolutely, Your Honor. And did they attempt to negotiate with the S&E after they found out about the assignment? They did, Your Honor. What Your Honor should understand is that there is a servicing company that acts as an intermediary between the trust. Right. And so they've been trying to work with the servicer to get information to negotiate, to do anything. In fact, the servicer put them into several trial modification payment plans where they took payments. So the intentions of your clients to negotiate with whoever was the owner was known to everybody. Absolutely. And they refused to negotiate. They can do that, can't they? They can do that, yes. There's no question about that. We're not challenging that. But when it comes to ‑‑ I'm not saying that there's a right to a modification, but I'm saying that the incentives that is part of why the beneficial party has to have an interest in order to foreclose. But the last point I would like to make is that the post-closing date issue, the trustee, and this is where section 2.07 comes in, in the PSA. And I'm sorry that 2.07 is not included in the complaint, but it's certainly available through that link. But that directly cites to and includes identical language as is included in the remix statute. And it specifically says this trustee cannot do anything to prejudice the remix status of the trust. It's specific in the remix statute. It's specific in the PSA. And the bottom line is the trustee cannot do something like accepting mortgages years after the trust closing that would prejudice the tax benefits that the certificate holders enjoy and also the fact that through this securitization process that these mortgage loans were bankruptcy remote. So the process was created for the ‑‑ I think those points are all made in Jenkins. You are well over your time. Thank you, Your Honor. Okay. Thank you, Ms. Gutierrez. Thank you, Mr. Fink. We thank you for the argument. The case is concluded and we are adjourned.
judges: Gleason, Bybee, Bea